ALB:JMH
F. #2016R01763

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – X

UNITED STATES OF AMERICA

   - against -

LENNY MATIAS,

          Defendant.

– – – – – – – – – – – X
– – – – – – – – – – – X

IN THE MATTER OF AN APPLICATION
FOR SEARCH WARRANTS FOR THE
PREMISES KNOWN AND DESCRIBED
AS:

    (1) 46 SCOPELITIS COURT IN
        HOLBROOK, NEW YORK, 11741;
        AND
    (2) 33 POWELL AVENUE IN
        FARMINGVILLE, NEW YORK,
        11738;

AND ANY CLOSED AND LOCKED
COMPARTMENTS AND CONTAINERS
FOUND THEREIN

– – – – – – – – – – – X

**TO BE FILED
UNDER SEAL**

COMPLAINT AND
AFFIDAVIT IN
SUPPORT OF SEARCH
WARRANTS AND AN
ARREST WARRANT

(21 U.S.C. § 841)

**16- 963M**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  OCT 27 2016  ★

LONG ISLAND OFFICE

EASTERN DISTRICT OF NEW YORK, SS:

        RAUL MERCADO, being duly sworn, deposes and states that he is a Task

Force Officer with the United States Department of Homeland Security, Homeland Security

Investigations ("HSI"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that, on or about and between March 2016 and September 2016, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LENNY MATIAS, together with others, did knowingly and intentionally distribute, and possess with intent to distribute, a controlled substance, to wit: 28 grams or more of a mixture or substance containing cocaine base.

(Title 21, United States Code, Section 841(b)(1)(B)(iii))

Upon information and belief, there is also probable cause to believe that there is kept and concealed within the premises known an described as (1) 46 SCOPELITIS COURT IN HOLBROOK, NEW YORK, 11741 ("Residence 1"); and (2) 33 POWELL AVENUE, FARMINGVILLE, NEW YORK 11738 ("Residence 2") and any closed and locked containers found in either Residence (collectively with Residences 1 and 2, "the TARGET PREMISES"), items which contain evidence, fruits, and/or instrumentalities of the distribution of controlled substances and the possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841, as further described in Attachments A1 and A2 hereto.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations ("HSI").   I have been a Task Force

---

[1]      Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to arrest and to search, I have not described all the relevant facts and circumstances of which I am aware.

Officer with HSI for approximately six months.   I have been employed by the Suffolk County Police Department for approximately 23 years, and I have held the rank of detective for approximately the last 16 years.

2.      I have been involved in the investigation of numerous cases involving the unlawful distribution of controlled substances.   I have participated in numerous investigations involving the use of confidential sources and electronic surveillance and recording devices.   I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

3.      In and around March 2016, a confidential source ("CS-1") informed law enforcement that the defendant LENNY MATIAS was a distributor of cocaine.   Specifically, CS-1 stated that he had purchased cocaine from the defendant on several occasions.   Under supervision and direction of law enforcement, CS-1 subsequently made several purchases of cocaine and cocaine base from the defendant, as set forth below.[2]

**The Defendant's Sale of Cocaine on May 10, 2016**

4.      On May 10, 2016, law enforcement agents directed CS-1 to make a purchase of cocaine from the defendant LENNY MATIAS, an individual CS-1 knew as

---

[2]      This application was submitted on October 24, 2016, to the Honorable Gary R. Brown, United States Magistrate Judge for the Eastern District of New York. Magistrate Judge Brown referred the application to the Honorable Anne Y. Shields, United States Magistrate Judge for the Eastern District of New York.   The application was withdrawn before Magistrate Judge Shields issued a ruling on it.   The cause of the withdrawal was a change in your deponent's schedule.   The instant application is otherwise identical in all substantive respects to the application submitted on October 24.

"Lenny."   Under supervision by law enforcement agents, CS-1 engaged in several recorded phone calls and text messages with the defendant.   In sum and substance, in those calls and messages, the defendant agreed to sell cocaine to CS-1.

5.   The defendant LENNY MATIAS instructed CS-1 to meet him in Farmingville, New York, near Residence 2, at a location where CS-1 had purchased cocaine from the defendant on prior occasions.   The defendant referred to Residence 2 as the "other house."   CS-1 was given a sum of pre-recorded U.S. currency by law enforcement and proceeded to the location as directed by the defendant in CS-1's automobile.   After CS-1 arrived at the location, the defendant entered CS-1's automobile, whereupon, after a brief conversation, CS-1 gave the defendant the pre-recorded U.S. currency and the defendant gave CS-1 a plastic bag containing a white rock-like powder.   A recording device that had been installed in CS-1's automobile by law enforcement recorded this incident.

6.   After the defendant LENNY MATIAS left the location, CS-1 proceeded to a pre-determined location to meet with law enforcement, and delivered the plastic bag provided by the defendant as described above.

7.   A photograph of the defendant LENNY MATIAS was obtained from his criminal history, and included in a photo array which was shown to CS-1.   CS-1 positively identified the photograph of the defendant LENNY MATIAS as the individual CS-1 knew as "Lenny," the individual from whom CS-1 purchased cocaine on May 10, 2016, as referenced above.

**The Defendant's Sale of Cocaine on June 16, 2016**

8.   On June 16, 2016, law enforcement agents directed CS-1 to make another purchase of cocaine from the defendant LENNY MATIAS.   Under supervision by

law enforcement agents, CS-1 engaged in several recorded phone calls and text messages with the defendant.   In sum and substance, in those calls and messages, the defendant agreed to sell cocaine to CS-1.

9.      The defendant LENNY MATIAS instructed CS-1 to meet him at his home address in Holbrook, New York, i.e., Residence 1.   CS-1 was given a sum of pre-recorded U.S. currency by law enforcement and proceeded to Residence 1 as directed by the defendant.   CS-1 parked in the defendant's driveway.   The defendant exited Residence 1 and entered CS-1's automobile.   After a brief conversation, the defendant exited CS-1's automobile and re-entered Residence 1.   Shortly thereafter, the defendant exited Residence 1 and re-entered CS-1's automobile, whereupon CS-1 gave the defendant the pre-recorded U.S. currency and the defendant gave CS-1 a plastic bag containing a white rock-like powder.   A recording device that had been installed in CS-1's automobile by law enforcement recorded this incident.

10.     The defendant LENNY MATIAS exited CS-1's automobile and returned inside Residence 1, and CS-1 proceeded to a pre-determined location to meet with law enforcement, and delivered the plastic bag provided by the defendant as described above.

**The Defendant's Sale of Cocaine and Cocaine Base on July 28, 2016**

11.     On July 28, 2016, law enforcement agents directed CS-1 to make another purchase of cocaine from the defendant LENNY MATIAS.   Under supervision by law enforcement agents, CS-1 engaged in several recorded phone calls and text messages with the defendant.   In sum and substance, in those calls and messages, the defendant agreed to sell cocaine, and cocaine base, to CS-1.

12.     The defendant LENNY MATIAS instructed CS-1 to meet him at his home address, i.e., Residence 1.   CS-1 was given a sum of pre-recorded U.S. currency by law enforcement and proceeded to Residence 1 as directed by the defendant.   CS-1 parked in the defendant's driveway.   The defendant exited Residence 1 and entered CS-1's automobile, whereupon the defendant gave CS-1 a plastic bag containing a white rock-like powder, and CS-1 gave the defendant the pre-recorded U.S. currency.   A recording device that had been installed in CS-1's automobile by law enforcement recorded this incident.

13.     The defendant LENNY MATIAS exited CS-1's automobile and returned inside Residence 1, and CS-1 proceeded to a pre-determined location to meet with law enforcement, and delivered the plastic bag provided by the defendant as described above.

**The Defendant's Sale of Cocaine and Cocaine Base on October 18, 2016**

14.     On October 18, 2016, law enforcement agents directed CS-1 to make another purchase of cocaine from the defendant LENNY MATIAS.   Under supervision by law enforcement agents, CS-1 engaged in several recorded phone calls and text messages with the defendant.   In sum and substance, in those calls and messages, the defendant agreed to sell cocaine, and cocaine base, to CS-1.

15.     The defendant LENNY MATIAS instructed CS-1 to meet him at Residence 2.   CS-1 was given a sum of pre-recorded U.S. currency by law enforcement and proceeded to Residence 2 as directed by the defendant.

16.     Law enforcement stationed near Residence 1 observed the defendant LENNY MATIAS exit Residence 1 carrying a plastic shopping bag and enter his vehicle, a

newer model Honda Accord with a New York State license plate.[3]   Law enforcement observed the defendant drive from Residence 1 to Residence 2, whereupon agents observed the defendant enter Residence 2 carrying the same plastic shopping bag.   The defendant thereupon left Residence 2, without the plastic shopping bag, and made a brief visit by car to a nearby convenience store, returning to Residence 2 after several minutes.

17.    CS-1 arrived at Residence 2 shortly before the defendant LENNY MATIAS returned.   CS-1 parked in the driveway of Residence 2, and the defendant arrived a few minutes later.   After a brief conversation, the defendant and CS-1 entered Residence 2 through the front door.   The defendant used a key to open the front door to Residence 2, the interior of which appeared to be unoccupied.   After a brief conversation, the defendant gave CS-1 a plastic bag containing other plastic bags, which themselves contained a quantity of a white rock-like powder.   CS-1 gave the defendant the pre-recorded U.S. currency.   During their continued conversation, the defendant discussed improvements that he was considering making to the interior of Residence 2.   Recording devices that had been installed on CS-1's person by law enforcement recorded this incident.

18.    CS-1 thereupon exited Residence 2, re-entered CS-1's automobile, proceeded to a pre-determined location to meet with law enforcement, and delivered the plastic bag provided by the defendant LENNY MATIAS as described above.   The plastic bag delivered by CS-1 appeared in all respects to be identical to the plastic bag that the defendant was observed transporting from Residence 1 to Residence 2.

---

[3]    Subsequent checks of law enforcement databases revealed that this automobile is registered to the same street address as Residence 1.

19.     As to the purchase made on October 18, 2016, lab results are not yet available.   However, a field test revealed that the substance obtained from the defendant was positive for the presence of cocaine.   The total gross weight of the substance recovered was approximately 111.1 grams.

20.     As to the three purchases prior to October 18, 2016, described above, the bags of white rock-like powder have been subjected to laboratory tests.   Each of the substances sold by the defendant LENNY MATIAS as described above tested positive for the presence of cocaine.   The total amount of powder cocaine sold by the defendant in the sales identified above was approximately 245 grams, and the total amount of cocaine base sold by the defendant in the sales identified above was approximately 49 grams.

**The TARGET PREMISES and the Requested Search Warrants**

21.     Residence 1 is a blue two-story single family residence located at 46 Scopelitis Court, Holbrook, New York, 11741, with white trim and a light colored roof. There are steps and a white railing which clearly displays the digits "46" in front of Residence 1.   Residence 1 faces south, with an asphalt driveway leading to an attached garage on the easterly side of the building.

22.     Residence 2 is a brown single-family ranch-style residence located at 33 Powell Avenue, Farmingville, New York, 11738, located on the north side of the street facing to the south, with a brown roof and brown diagonal siding on the front of the building.   The digits "33" are clearly visible near the top left of the front door, attached to the siding.   There is brown wood stockade fencing on the easterly side of the building, and a driveway on the westerly side of the building.

23.     The facts establishing probable cause as to the TARGET PREMISES are set forth above.

24.     Based on those facts, and on my training and experience, I respectfully submit that there is probable cause to believe that the TARGET PREMISES contain evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841.

25.     Based on my training and experience, my personal participation in this and other investigations involving illegal drug activity, and conversations with other law enforcement officers who are knowledgeable of drug-trafficking investigations, I know that:

a.     Individuals who traffic in illegal controlled substances maintain books, records, receipts, notes, ledgers, and other papers relating to the transportation, storage, order, sale and distribution of controlled substances.   Although quantities of narcotics sometimes move very quickly from one location to another as they are sold, records and documents frequently are maintained in these locations on a continuing basis and for long periods.

b.     It is also common for drug traffickers to secrete contraband related to their drug trafficking activity, such as scales, razors, packaging materials, cutting agents, cooking utensils, and containers for their preparing controlled substances for distribution, at their residence and/or automobiles, or the residences and/or automobiles of family members, friends or associates, in their business locations, or in the places used by drug traffickers to conduct their drug distribution activity.

c.     Drug traffickers commonly maintain address books or other papers which reflect names, addresses and/or telephone numbers for other associates of their illegal organization.

d.      Drug traffickers maintain on hand large amounts of U. S. currency in order to maintain and finance their ongoing drug business.   It is common for drug traffickers to secrete contraband, proceeds of drug sales, including jewelry and precious metals, and records of drug transactions in secure locations for ready access and to conceal these items from law enforcement authorities.

e.      Persons involved in drug trafficking very often conceal in secure locations, with ease of access, caches of drugs, large amounts of currency, money counting machines, financial instruments and proceeds of drug transactions, and evidence of financial transactions relating to or obtaining, from or arising from the secreting, or spending of large sums of money made from engaging in drug trafficking activities.

f.      Drug traffickers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their assets (to include currency), and their drugs.   That these traffickers usually keep these photographs and/or videos within their places of residence or business.

g.      Drug traffickers often utilize smart phones and/or personal computers to maintain records of drug trafficking activities and/or drug-related financial transactions and the subsequent movement of assets.   That drug traffickers often utilize such devices and other forms of electronic or wire communication to further their drug trafficking and drug-related financial activities.

26.     Numerous surveillance and interviews conducted by agents and officers and discussions with other law enforcement agents have established that it is the inevitable custom and practice of individuals involved in the drug distribution business to keep records of proceeds of the drug enterprise in or near their person, vehicle or private residences.   As a

result of our training and experience we have determined that traffickers of controlled substances or those that assist them, maintain and tend to retain accounts of records of those transactions for long periods of time.   Such records typically detail, usually in a simple code, the customers, the amounts of controlled substances obtained and distributed and/or the cash amounts paid and outstanding, or other funds which are expended or owed.   These records have crucial importance both to the continuation of any drug distribution network, where records of past transactions are necessary to continue the transactions.   Intervening issues such as: the history of prior payments made, the quality of the drugs received, seizures of the drugs by law enforcement, thefts by other drug dealers, etc., all require detailed records of these past transactions to discuss and appropriately resolve terms of current drug sales.   The custom and practice is for traffickers to maintain detailed historical records in an accessible but secure location.   Such locations, as noted above, commonly used are: in or near their person, vehicle or private residences.   These may be in the form of collected paper scraps of sophisticated computer accounts.   Copies generally are kept in a more secure location such as safe deposit box or a hidden compartment or safe.   In addition, wholesale drug dealers often maintain financial instruments, and other items of value and/or proceeds of drug transactions in such locations.   Such traffickers also must maintain evidence of prior financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired from the proceeds of their distribution of controlled substances in order to document and collect past drug debts.

       27.     Based on investigative experience, it is your deponent's belief that drug dealers employ various methods of concealment to secure and camouflage drug proceeds and drug records.   Drug dealers commonly use safety deposit boxes, safes and vaults to conceal

and secure these illicit drug proceeds and the requisite drug records required to maintain these drug businesses.   These safes are normally kept in or extremely close to the drug dealer's premises in order to have rapid access to the contents therein.   And, as experience has shown, these safes are concealed within the drug dealer's premises in order to evade detection by law enforcement authorities or others without a need to know.

28.   As a result of our training and experience, we have determined that traffickers of controlled substances, as a custom of the trade, often arrange means and methods to destroy records and drugs that are in their possession to avoid their seizure by law enforcement.   Such evidence and records maintained as computer recorded data that include drug records, cellular telephone clientele lists programmed into the cellular telephones and/or paging devices are all easily destroyable on a moment's notice.   Controlled substances – such as powder and crack cocaine, which are the subject of this investigation – can easily be flushed down a drain.   In addition, traffickers of controlled substances or those that assist them, as a custom of the trade often possess weapons and ammunition in order to protect their illegal assets and contraband.

WHEREFORE, your deponent respectfully requests that the defendant LENNY MATIAS, be dealt with according to law.   Your deponent further respectfully requests that the Court issue search warrants to search the TARGET PREMISES and seize the items listed in Attachments A1 and A2 hereto that may constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841.

IT IS FURTHER RESPECTFULLY REQUESTED that this Court authorize law enforcement to execute the requested arrest warrant and search warrant at any time during the day or night.   I believe that this is necessary because of the risks that evidence and/or contraband will be destroyed during the course of executing the requested warrants, a risk that is lessened if the warrants can be executed at times in which the defendant LENNY MATIAS and other occupants of the TARGET PREMISES are more likely to be asleep.

IT IS FURTHER RESPECTFULLY REQUESTED that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including this affidavit, the arrest warrant and the search warrants.   I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into a criminal organization, and not all of the targets of this investigation will be searched at execution.   Based upon my training and experience, I have learned that criminals actively search online for search warrants and related documents, and disseminate them to other criminals as they deem appropriate.   Premature disclosure of the contents of these items may have a significant and negative impact on the continuing

investigation and may severely jeopardize its effectiveness allowing destruction and

concealment of evidence and flight by co-conspirators.

RAUL MERCADO
Task Force Officer
United States Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this
27 day of October, 2016

THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

ATTACHMENT A1
Property to be Seized

The following items may be seized from the premises known and described as 46 SCOPELITIS COURT IN HOLBROOK, NEW YORK, 11741, AND ANY CLOSED AND LOCKED COMPARTMENTS AND CONTAINERS FOUND THEREIN:

(1)   any and all controlled substances including, but not limited to cocaine and cocaine base;

(2)   any and all items used to package controlled substances for transportation and sale, including but not limited to scales, baggies, and other packaging paraphernalia;

(3)   any records relating to the distribution of controlled substances, sales and collection, receipts and or summaries, client lists, telephone records (including mobile or computerized telephone and answering machines or beepers with numbers stored in and relayed to such devices);

(4)   any and all financial records reflecting proceeds of drug activity, including but not limited to: bank records, accounts and statements, passbooks, deposit receipts, canceled checks and stubs, copies of tellers checks and money orders, electronic transfer receipts, debit and credit memorandums, applications and/or agreements for accounts, records of safe deposit box numbers, locations, records of entry, lists of contents and other records which would reflect financial transactions, financial instruments, financial transaction records, traveler's checks, money drafts, related financial records, money wrappers and currency counting machines/devices, including all financial records and other documents showing income or expenditures, such as credit card receipts, electric bills,

telephone bills, property deeds, vehicle registrations or titles, and/or other items evidencing the obtainment, concealment, and/or transfer or expenditure of funds or currency, and documentation concerning the occupancy or ownership of real estate;

(5)     entry keys, safe deposit keys, vehicle keys;

(6)     United States or foreign currency, negotiable instruments, stocks, bonds, jewelry, and precious metals and other valuables used to purchase controlled substances or which represent the proceeds of criminal activity;

(7)     photographs and/or videos, in particular photographs and video of assets and/or controlled substances, and/or of co-conspirators;

(8)     any and all weapons, firearms, ammunition and related accessories, used for securing controlled substances and/or proceeds;

(9)     documents relating to the existence and rental of safe deposit boxes and keys to safe deposit boxes including other modes of access to safes, containers or cabinets, locked or unlocked, containing items described above; and

(10)    all text messages, email or other communications concerning the distribution of controlled substances, sales and collection;

(11)    all digital or computer records containing any of the above-described information.  This also includes all copies of the information described above that may be maintained on premises as archive or backup copies, and includes any electronic devices on which any of the foregoing items are reasonably likely to be present, all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841.

ATTACHMENT A2
Property to be Seized

The following items may be seized from the premises known and described as

33 POWELL AVENUE, FARMINGVILLE, NEW YORK 11738, AND ANY CLOSED AND

LOCKED COMPARTMENTS AND CONTAINERS FOUND THEREIN:

(1)     any and all controlled substances including, but not limited to cocaine

and cocaine base;

(2)     any and all items used to package controlled substances for

transportation and sale, including but not limited to scales, baggies, and other packaging

paraphernalia;

(3)     any records relating to the distribution of controlled substances, sales

and collection, receipts and or summaries, client lists, telephone records (including mobile or

computerized telephone and answering machines or beepers with numbers stored in and

relayed to such devices);

(4)     any and all financial records reflecting proceeds of drug activity,

including but not limited to: bank records, accounts and statements, passbooks, deposit

receipts, canceled checks and stubs, copies of tellers checks and money orders, electronic

transfer receipts, debit and credit memorandums, applications and/or agreements for

accounts, records of safe deposit box numbers, locations, records of entry, lists of contents

and other records which would reflect financial transactions, financial instruments, financial

transaction records, traveler's checks, money drafts, related financial records, money

wrappers and currency counting machines/devices, including all financial records and other

documents showing income or expenditures, such as credit card receipts, electric bills,

telephone bills, property deeds, vehicle registrations or titles, and/or other items evidencing the obtainment, concealment, and/or transfer or expenditure of funds or currency, and documentation concerning the occupancy or ownership of real estate;

(5)      entry keys, safe deposit keys, vehicle keys;

(6)      United States or foreign currency, negotiable instruments, stocks, bonds, jewelry, and precious metals and other valuables used to purchase controlled substances or which represent the proceeds of criminal activity;

(7)      photographs and/or videos, in particular photographs and video of assets and/or controlled substances, and/or of co-conspirators;

(8)      any and all weapons, firearms, ammunition and related accessories, used for securing controlled substances and/or proceeds;

(9)      documents relating to the existence and rental of safe deposit boxes and keys to safe deposit boxes including other modes of access to safes, containers or cabinets, locked or unlocked, containing items described above; and

(10)     all text messages, email or other communications concerning the distribution of controlled substances, sales and collection;

(11)     all digital or computer records containing any of the above-described information.   This also includes all copies of the information described above that may be maintained on premises as archive or backup copies, and includes any electronic devices on which any of the foregoing items are reasonably likely to be present, all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841.